UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x

UNITED STATES OF AMERICA,


-against-                                    S6 03 CR 1238 (KMW)
                                             S1 05 CR 0116 (KMW)

                                             ORDER
RADCLIFFE BARNES,
     a/k/a "Bobby,"

               Defendant.
-------------------------------------x

WOOD, U.S.D.J.:

     By motion dated August 8, 2007, Defendant Radcliffe Barnes

(1) moves for safety valve consideration pursuant to 18 U.S.C

§3553(f); and (2) opposes (a) the Government's motion for a four

level enhancement under the advisory Sentencing Guidelines based

on his role as a leader or organizer, and (b) the Government's

contention that the drug weight attributable to him is more than

30,000 kilograms of marijuana.  For the reasons stated below, the

Court finds that Defendant Barnes was a leader or organizer of

the drug conspiracy for which he pleaded guilty.  Accordingly,

the Court denies Defendant's motion for safety valve

consideration, and concludes that a four level role enhancement

under the Sentencing Guidelines is warranted.  The Court also

finds that at least 30,000 kilograms of marijuana is attributable

to Defendant Barnes, and therefore concludes that Defendant's

base offense level pursuant to U.S.S.G. § 2D1.1(c)(1) is 38.

                              1

## I. Background

On September 15, 2005, Defendant Radcliffe Barnes pleaded guilty to participating in a conspiracy to distribute at least 100 kilograms of marijuana and making false statements on an immigration form. Defendant was allegedly involved in a marijuana trafficking organization that shipped thousands of kilograms of marijuana from California to New York, from the mid-1990's through 2003. It is the Government's belief that Defendant's barbershop and clothing store, B&B Hair and Fashion ("B&B"), was the organization's East Coast headquarters.

On April 6, 2006, Defendant submitted a letter objection to the Pre-Sentence Report ("Def. Sentence Mem."). Defendant's letter included a request for a sentence below the advisory Guideline Range. On June 16, 2006, the Government filed its response to Defendant's submission ("Gov. Resp."). On August 8, 2007, Defendant moved for safety valve consideration pursuant to 18 U.S.C. §3553(f). See Memorandum of Law in Support of Defendant's Motion for Safety Valve Consideration with a Non-Guideline Sentence and in Opposition to the Government's Motion for Enhancement on the Grounds of Role and Drug Weight, dated August 8, 2007 ("Def. Pre-Sentence Motion"). In moving for safety valve consideration, Barnes argued, inter alia, that he provided truthful information to the Government after his arrest and that he was not a leader or organizer of the offense. Further, the defendant argued that the Court is limited to the

facts admitted in his plea allocution, specifically, the drug quantity admitted to at the entry of his guilty plea.

## II. Defendant's Role as a Leader or Organizer of the Offense

In order to apply the four-level role enhancement pursuant to U.S.S.G. § 3B1.1, the Court must find by a preponderance of the evidence that (1) Defendant was an "organizer or leader" of the drug conspiracy, and (2) the criminal activity involved five or more participants, or was otherwise extensive. The same standard applies in determining whether Defendant is a "leader" for purposes of safety valve consideration. See U.S.S.G. § 5C1.2 Cmt. 5.[1] The Government has provided ample evidence supporting their determination that the defendant was the leader of an extensive marijuana trafficking organization, and Defendant offers no credible evidence to support his version of the facts. The Court therefore finds that Defendant was a leader or organizer in the drug conspiracy to which he pleaded guilty, and that this conspiracy was extensive.

There is significant evidence that Barnes, along with his brother, ran the marijuana trafficking conspiracy and supervised other individuals. Christopher Pryce, a co-conspirator, made a

---

[1] Defendant does not qualify for safety valve relief if he was an organizer, leader, manager, or supervisor in the offense. See 18 U.S.C. § 3553(f). Defendant has the burden to prove he is entitled to safety valve relief. See United States v. Tang, 214 F.3d 365, 371 (2d Cir. 2000).

post-arrest statement that confirmed the existence of a large-scale marijuana distribution organization headed by Barnes and his brother.  He described Barnes as a major marijuana dealer who sold approximately 100 pounds of marijuana at a time.  He also described Corey Carwin, Barnes' half-brother, as the "enforcer" of the Barnes organization, supporting the inference that Carwin reported to Barnes.  See GX 3501-C.  Mark Daley, a cooperating witness, testified credibly at Pryce's trial that he became involved with the Barnes organization in the summer of 2000, and that Barnes and his brother were shipping up to 3,000 pounds of marijuana per load from California to New York.  See Tr. 171, 177.  Daley also described Barnes as a "big dealer."  See Tr. 199.

In addition, at Pryce's trial, Detective John Wighaus testified credibly that when co-defendants Cleon Morgan and Darnel Latouche were arrested while driving a tractor trailer containing 1,100 pounds of marijuana (but bearing a bill of lading claiming the cargo was heavy duty machinery, from Anaheim, California), each had in their possession a business card from B&B, with the name "Bobby" in the upper right-hand corner.  In addition to the B&B business card, Latouche also had a business card from Meoshe Fashion, Defendant's brother's Los Angeles-based clothing company.  See Tr. 514-15.  This evidence supports the inference that Morgan and Latouche worked as drivers for Barnes and that Barnes helped organize the drug shipment.

4

The Government also offers recordings of intercepted telephone calls from Pryce, addressing the defendant's role in the organization. Pryce was overheard describing the seizure of the tractor trailer as a "big, big, big, lick" to Barnes, stating that Barnes "has to watch himself" and that Barnes was "lying low." See GX 212 at 1. This evidence indicates that Barnes was a leader in the drug conspiracy who had a significant stake in the drugs transported by Morgan and Latouche.

The Government also presented convincing evidence that Barnes' marijuana trafficking organization involved five or more people or was otherwise extensive. For example, Pryce's post-arrest statement states that Defendant, Lennox Barnes, Lincoln Davis, Michael Shea, and Corey Carwin all participated in the drug conspiracy. See GX 3501-C at 2. Daley, the cooperating witness mentioned above, testified credibly at Pryce's trial that other members of the conspiracy included Norman Harrison, Robert DeLeon, Aisha Dawkins, and Stephanie Laing. See Tr. 176-79.

Upon considering the evidence, the Court finds that Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Accordingly, the Court concludes that (1) Defendant's Sentencing Guidelines Offense Level should be increased by 4 levels, pursuant to U.S.S.G. § 3B1.1(a); and (2) Defendant does not qualify for safety valve relief because he was a leader or organizer of the criminal activity.

**III. Enhancements on the Ground of Drug Weight**

The Court also finds that Defendant is responsible for more than 30,000 kilograms of marijuana, and therefore concludes that Defendant's base offense level pursuant to U.S.S.G. § 2D1.1(c)(1) is 38.

Defendant argues that the Court may consider only facts he admitted in his plea allocution. This argument is without merit. See United States v. Vaughn, 430 F.3d 518, 525 (2d Cir. 2005). The Court is obliged to make its own factual findings at sentencing using a preponderance of the evidence standard, United States v. Gonzalez, 407 F.3d 118, 125 (2d Cir. 2005), and would "violate section 3553(a) by limiting consideration of the applicable Guidelines range to the facts found by the jury or admitted by the defendant," United States v. Crosby, 397 F.3d 103, 115 (2d Cir. 2005).

The Government has presented persuasive evidence that more than 30,000 kilograms of marijuana is attributable to Defendant. Daley testified credibly at Pryce's trial that by the year 2000, Barnes and his brother were shipping marijuana from California to New York. Daley testified that each load contained between 1,000 and 3,000 pounds of marijuana, and that shipments took place two or three times per month. See Tr. 170, 177. Daley's testimony concerning the frequency of shipments is corroborated by truck rental records (GX 350). These records show that between January

6

2002 and September 16, 2003, Cleon Morgan, who pleaded guilty to participating in the Barnes conspiracy, rented a truck 63 times.

The Government also produced evidence that one of Defendants' marijuana truckloads was intercepted by the police in Nassau County in 2003, containing approximately 1,100 pounds of marijuana (the "2003 Interception"). See Tr. 508-09; GX 1002. At Pryce's trial, Detective John Wighaus testified that both drivers had in their possession a business card from B&B, with the name "Bobby" in the upper right hand corner. See Tr. 514. In addition, one of the drivers admitted that he was bringing the load of marijuana to Corey Carwin, see Police Report (3501-DD), whom Daley testified was one of Defendant's marijuana workers, see Tr. 175. Furthermore, in an intercepted phone call, Pryce discussed the "big lick" that Defendant took when this truck was seized. See GX 211 at 3.

Based on this evidence, the Court finds that Defendant is responsible for 69,300 pounds of marijuana, or approximately 31,000 kilograms. The Court calculates this amount by multiplying the 1,100 pounds of marijuana present in the truck by the 63 shipments reflected in the truck rental records. The Court also notes that this is a conservative estimate of the amount attributable to Defendant. Daley testified at Pryce's trial that Barnes was shipping marijuana as early as 2000. See Tr. 171. However, the Court counts only shipments reflected in the shipping records, which begin in 2002. Daley also testified

7

the shipping records, which begin in 2002. Daley also testified that each truckload could contain up to 3,000 pounds of marijuana. See Tr. 177. However, the Court uses the 1,100 pounds seized in the 2003 Interception as the baseline for its calculation.

Because Defendant is responsible for 30,000 kilograms or more of marijuana, the Court concludes that Defendant's base offense level pursuant to U.S.S.G. § 2D1.1(c)(1) is 38.


Sentencing for the defendant will be held on Thursday, April 3, 2008 at 11:00am.

SO ORDERED

Dated:   New York, New York
         March 31 , 2008

                              _____
                                   Kimba M. Wood
                            United States District Judge